# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:12cv51

| | |
|---|---|
| WALTER A. HILL, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| HUBBELL DISTRIBUTION, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 12].

## PROCEDURAL HISTORY

On March 13, 2012, the Defendant Hubbell Distribution, Inc.[1] (Hubbell) removed this action from the General Court of Justice, Superior Court Division, Buncombe County on the basis of diversity jurisdiction. [Doc. 1]. Although not stated separately, it appears that the Plaintiff intended to allege two causes of action: one for wrongful discharge in

---

[1] The Complaint improperly named the Defendant as Hubbell Incorporated (Delaware). [Doc. 1]. In the Notice of Removal, the Defendant provided the correct name and noted that it had accepted service. [Id.]. The caption of the case has been amended to reflect the correct name of the Defendant.

violation of N.C. Gen. Stat. §9-32 and a second one for a violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §95-25.22. [Doc. 1-1]. For relief, the Plaintiff seeks reinstatement, damages, vacation pay, and interest. [Id. at 5-6]. The Defendant has moved for summary judgment. [Doc. 12].

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), cert. denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "Regardless of

whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment
> 
> "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id.

Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## SUBJECT MATTER JURISDICTION

First, the Court must address whether subject matter jurisdiction lies regarding this action. Even though the Plaintiff has not moved to remand this action or otherwise challenged removal, district courts have an independent obligation to address subject matter jurisdiction, even *sua sponte*. Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008). The Plaintiff's first claim is predicated on his purported discharge because he was called for jury duty, in violation of N.C. Gen. Stat. §9-32(a). That statute provides that any employer which violates the statute may be liable in a civil action for reasonable damages and an employee who was discharged in violation of the statute "shall be entitled to be reinstated to his former position." N.C. Gen. Stat. §9-32(b). Plaintiff has made demand on the Defendant for actual damages in the amount of $33,567.41. [Doc. 1-2]. In addition thereto, the Plaintiff seeks reinstatement. [Doc. 1-1]. Hubbell has alleged, and the Plaintiff has not disputed, that in addition to the actual damages demanded, reinstatement of the Plaintiff to his former position will cause it to incur additional costs in excess of $42,000.00 because it will be compelled to either re-hire the Plaintiff in a newly created position or in his original position which would then require Hubbell to provide a severance package to the individual hired

to replace him. [Doc. 1]. Combining these elements shows that the jurisdictional threshold of $75,000.00 is met because the amount in controversy in a diversity proceeding is "the pecuniary result to either party which [a] judgment would produce." Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (internal quotation and citation omitted); 28 U.S.C. §1332 (providing for $75,000.00 threshold for diversity jurisdiction).

The Defendant's position regarding the calculation of the jurisdictional amount is, therefore, supported by the law and undisputed by the Plaintiff. See Keith v.Clarke American Checks, Inc., 261 F.Supp.2d 419, 422-23 (W.D.N.C. 2003) (discussing equitable remedy of reinstatement and cost to employer); Crespo v. Delta Apparel, Inc., 2008 WL 2986279 (W.D.N.C. 2008) (noting Wage and Hour Act provides for liquidated damages in the amount of twice the amount of actual wages owed). The Court therefore finds that the jurisdictional threshold has been established based on the first cause of action alone and the Court has subject matter jurisdiction over this matter.

## FACTUAL BACKGROUND

Hubbell is a manufacturing company which produces light fixtures, surge protectors and other parts for electrical devices. [Doc. 13-2 at 5]. The Plaintiff (Hill) was a manufacturing technician doing a variety of jobs at Hubbell's Asheville plant. [Id. at 6-7]. He was initially hired in October 2009 and worked as an hourly employee on the first shift. [Id. at 10]. His immediate supervisor throughout his employment was Michael Brock (Brock). [Id. at 8].

Hubbell has an attendance policy outlined in its Employee Handbook which excuses an employee's absence from work for jury duty. [Doc. 13-2 at 56-57; 60]. Hubbell also pays its employees the earnings they would have received but for serving on jury duty. [Id.]. Hill was aware of this policy and conceded that he had received a copy of the Employee Handbook. [Doc. 13-2 at 18-19].

Hill was summoned for jury duty at the Buncombe County Courthouse for March 28, 2011. [Doc. 13-2 at 59]. The summons contained a provision instructing Hill to call a telephone number the evening before jury duty in order to listen to a recorded message which would advise whether or not his appearance the next morning was required. [Id.]. The summons contained the following language:

> A recorded message will inform you if your appearance will be required. This message will run the entire night until normal business hours. Sometimes the court is able to release some or all of the jurors when the need for jurors is less than anticipated.

[Id.]. The summons was mailed to Hill at 279 Hillside Street, Asheville, N.C. 28801. [Id.].

Hill did not reside at this address, but rather it was his mother's home. [Doc. 13-2 at 2-4]. He did, however, receive mail at his mother's address and retrieved it from her from time to time. [Id.]. Hill testified that his eighty year old mother routinely opened and read his "legal mail." [Id. at 13]. Hill testified that on the morning of March 28, 2011, his mother telephoned him and advised him that he had jury duty that day. [Id. at 28]. Hill testified that he did not recall having picked up his mail prior to that morning although he admitted that he had visited his mother on March 5, 2011 because it was her birthday. [Id. at 28-29]. Hill went to his mother's house to pick up the jury summons. [Id. at 33].

Hill's mother testified that she did indeed call him the morning of March 28, 2011 to remind him that he had jury duty. [Doc. 13-3 at 2-3]. Although she was not sure, her recollection was that Hill had retrieved the summons sometime prior to March 28, 2011 and had taken it with him. [Id. at 4]. She acknowledged that she had placed a note on her calendar to call

her son the morning of jury duty to remind him. [Id.].

Hill testified that before he left to go to his mother's house to pick up the summons, he called Brock to tell him that he had jury duty. [Doc. 13-2 at 34]. Brock told Hill to "go and do what [you] have to do" but to stay in contact. [Id. at 36-37].

Hill concedes that he did not call the telephone number on the summons to find out whether he had been released from jury duty. [Id. at 38]. Instead, he claims that he went to the Buncombe County Courthouse and arrived in the area of the jury assembly room at approximately 8:45 on the morning of March 28, 2011. [Id. at 40-41]. Hill testified that he and three other jurors waited in the hallway until a court employee advised them that they were not needed for jury duty. [Id. at 41-42]. Hill testified that he had waited about an hour and a half before the court employee told him that he was free to go. [Id. at 42].

Hill then called his supervisor, Brock, to advise that he had been released from jury duty. [Id. at 43]. Hill also testified that he told Brock that since it was past 10:30 am, Hill would have been assessed one entire day off and he could use the time to take care of some personal business. [Id.]. According to Hill, Brock simply said that he would see Hill the next day. [Id.].

The next morning, Hill presented the summons to Brock who then explained that it was necessary to have a document showing that Hill had actually appeared at the Courthouse for jury duty. [Id. at 47-48]. Therefore, Hill went back to the Courthouse to ask Beverly Wilkes (Wilkes), the Buncombe County Court Jury Clerk, for such a letter. [Doc. 13-4]. The letter Wilkes provided, however, did not state that Hill had appeared at the Courthouse for jury duty. [Id. at 50]. He therefore asked Wilkes to add such language to the letter. [Id.]. Wilkes told Hill that she had not seen him at the courthouse and therefore could not "actually say that I saw you yesterday." For that reason Wilkes declined to include such language in the document. [Id.]. The letter provided by Wilkes contained the following:

> This is to certify that Walter Alvin Hill was duly summoned for jury duty on Monday, March 28, 2011. He/She was instructed to call anytime after 6:00 p.m. on the evening before the jury service date to see if their service would be needed. He/She was subsequently excused through our telephone system, therefore the above named juror was excused from jury duty.

[Doc. 13-4 at 4].

Wilkes has provided an affidavit in which she stated that Hill did not appear at the Courthouse on the morning of March 28, 2011. [Doc. 13-4]. Hill did, however, ask her at a later time to provide a letter concerning his jury duty. [Id.]. Wilkes stated that not only did she not see Hill on the

9

morning of March 28, 2011, but also that no other potential jurors appeared that morning. [Id. at 2]. She so advised Marc Shimberg (Shimberg) who is the Trial Court Administrator for Buncombe County Superior Court. [Id.].

At the beginning of his shift the next day, Hill gave Wilkes' letter to Brock. [Doc. 13-2 at 51]. Hill was later summoned to a meeting with Brock and Don Koppenhaver (Koppenhaver) of Human Resources. [Id. at 51]. Koppenhaver told Hill that he needed to conduct an investigation into whether or not Hill had been dishonest about appearing for jury duty. [Id. at 53].

Koppenhaver has provided an affidavit in which he stated that while Hill was on suspension, he made inquiries of Shimberg concerning Hill's attendance at jury duty on March 28, 2011. [Doc. 13-8]. Shimberg advised Koppenhaver that "no potential jurors appeared at Court the morning of March 28, 2011." [Doc. 13-7 at 2]. "Hill was not in attendance March 28, 2011 and never served jury duty." [Id.]. Koppenhaver stated that while he was a decision-maker in the decision to terminate Hill, he relied on the information provided to him by Shimberg and the letter provided to Hill by Wilkes. [Doc. 13-8 at 2]. He concluded that Hill had been excused from jury duty by the telephone system the night before March 28, 2011. [Id.].

Koppenhaver also considered the information provided to him about

the incident by Hill's supervisor, Brock.[2] [Id. at 7]. Brock stated that Hill called him on the morning of March 28, 2011 to advise that he had jury duty that day and apologized for not letting Brock know earlier. [Id.]. Later that day, Hill called Brock to say that he had been excused from jury duty. [Id.]. Brock stated that Hill's "story remained unclear as to when he knew [that he had been excused from jury duty], where he was on the 28th, and whether he was attempting to get attendance excuse or pay for the jury duty differential." [Id.]. While Hill claimed it "was all a big misunderstanding," Brock felt that Hill had "violated Group I, rule 4 [of the Employee Handbook], and falsified himself by trying to pass off documentation as proof of serving his day of jury duty when in fact he had been excused from that the day before. Whether it was done for pay or for attendance reasons, the entire event was implying something that was a falsehood." [Id.].

Koppenhaver submitted a recommendation concerning Hill to the other decision makers.

The Superior Court informed me that they did not have any

---

[2] Koppenhaver attached to his affidavit emails dated April 5, 2011 which documented the investigation and the considerations of the decision makers in determining to terminate Hill. [Doc. 13-8 at 3-7]. Koppenhaver stated that these emails were routinely kept in the regular course of business and were made at or near the time of the occurrences at issue by persons with knowledge of the investigation and decision. [Id. at 3]. Hill has not objected to this evidence.

jurors on Monday because there were no cases requiring new jurors that day. Therefore, they do not know where [Hill] would have been waiting in the court house. [Hill] stated that there were seven[3] others who also showed up and waited around. It appears that [Hill] has tried to falsify his attendance on Monday. The two documents that have been provided and the timing of which day they were given to [Brock] again show that either [Hill] did not go to the court house on Monday or did not want to provide the document saying he was released on Sunday until we requested proof of attendance. Whether [Hill] was requesting pay for jury duty or not he still tried to falsify his attendance on Monday, March 28, 2011. I recommend that we terminate [Hill's] employment.

[Id. at 5]. Hill was terminated on April 7, 2011. [Id. at 6].

## DISCUSSION

Section 9-32 of the North Carolina General Statutes provides that "No employer may discharge or demote any employee because the employee has been called for jury duty or is serving as" a juror. It is undisputed that Hill was an at-will employee. It is also undisputed that Hill's claim for wrongful discharge is limited to his allegation that Hubbell violated N.C. Gen. Stat. §9-32. Hill asserts that he was discharged by Hubbell because he was "called for jury duty" and thus his discharge violated §9-32.[4] Neither

---

[3] The discrepancy between Plaintiff's statement that seven other jurors appeared on March 28 [Doc. 13-8 at 5, 7] and Plaintiff's deposition testimony that only three others were present [Doc. 13-2 at 41] is neither explained nor is it relevant.

[4] Hill has conceded that he did not serve on jury duty on March 28, 2011. [Doc. 1-3]. Hill therefore has no claim that Hubbell discharged him because he served as a juror and summary judgment as to any such claim is granted.

12

party has cited to any case interpreting and applying the statute. Therefore, the Court turns for guidance to the statute pertaining to federal jurors, which contains remarkably similar language. 28 U.S.C. §1875. That section provides that "[n]o employer shall discharge … any permanent employee *by reason of* such employee's jury service, or the attendance … in connection with such service[.]." (emphasis provided). This statute has been interpreted as requiring a showing that jury service was the "but for" cause of the discharge.

> Unlike Title VII, [the Jury Systems Improvement Act's] text does not provide that a plaintiff may establish [retaliation] by showing that [jury service] was simply a motivating factor. In Gross [v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 649 (2009)], the Court looked to the statutory text of the Age Discrimination in Employment Act of 1967 (ADEA) and found that [the Act] prohibits an employer from discriminating against an individual "because of such individual's age." The Court found that the "ordinary meaning" of "because of" an individual's age is that age was the "but-for" cause of the adverse employment action. The language of the Juror Act is very similar to that of the ADEA - it prohibits an employer from taking adverse action against an employee "by reason of" that employee's federal jury service. … Thus, … [the plaintiff] must prove by a preponderance of the evidence that she was [discharged] "by reason of" her jury service – that is, that jury service was the "but-for" cause of the decision to [terminate] her.

Williams v. District of Columbia, 646 F.Supp.2d 103, 109 (D.D.C. 2009) (internal quotations and citations omitted). This logic is equally

13

applicable here. Just as the terms "because of" and "by reason of" require a showing of "but for" causation, the term "because" requires a like showing.

The burden under this statute "never shifts to the employer, but is at all times on the employee, who must prove, by a preponderance of the evidence, that [his] jury service was not merely a motivating factor in [his] termination but rather was *the* reason for [his] termination." Crowley v. Pinebrook, Inc., 2010 WL 4963004 **3 (D.Md.), affirmed 439 Fed. App'x. 232 (4th Cir.), cert. denied ___ U.S. ___, 132 S.Ct. 1554, 182 L.Ed.2d 165 (2012). This statute, "unlike the ADEA and Title VII, … does not reach adverse employment action in general, instead only prohibiting employers" from discharging employees "because of their jury service." Papalia v. Milrose Consultants, Inc., 2011 WL 6937601 **13 (S.D.N.Y. 2011).

In this case, Hill has not come forward with any forecast of evidence, direct or circumstantial, that Hubbell terminated him because he was called for jury duty. The uncontroverted evidence is that Hill was terminated because Hubbell's investigation led it to conclude that he had falsified the circumstances surrounding his absence from work on March 28, 2011. An employer's requirement of honesty in connection with absences from work does not violate a statute prohibiting employers from taking adverse action

against employees because of jury service.  In re Scott, 155 F.R.D. 10 (D.Mass. 1994).  It is a reasonable workplace regulation.[5]  Id.; Johnson v. Appliance and T.V. Center, Inc., 1987 WL 16942 (M.D.N.C. 1987) (absenteeism is a legitimate reason for discharge).  Therefore, Hill's forecast of evidence is insufficient to show any violation for the statute. Papalia, 2011 WL 6937601 **14.

The Defendant makes a similar argument relying on Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 515 S.E.2d 438 (1999).  In Garner, the plaintiff was terminated after he failed a drug screening test required by his employer.  It was undisputed that the employer had failed to use an approved laboratory, as required by a state statute.  It was also undisputed that the statute expressed the public policy of North Carolina that certain procedural requirements be met in performing drug screening tests of employees.  The North Carolina Supreme Court held, however, as

---

[5] For this reason, the Court does not find it necessary to address the "good faith belief defense" asserted by the Defendant in its citation to Scruggs v. Carrier Corporation, 688 F.3d 821 (7th Cir. 2012).  The only evidence presented by the Plaintiff in this case is that Hill was discharged by Hubbell because Hubbell found that he had been dishonest as to his whereabouts on the day in question.  "But for" that finding by Hubbell's decision makers, he would not have been terminated.  This Court does not "sit as a super-personnel department to review the wisdom or fairness of" an employer's employment decisions.  Lors v. Dean, 595 F.3d 831, 835 (8th Cir. 2010) (internal quotations and citations omitted).  Likewise, Plaintiff's heavy reliance on Stroder v. United Parcel Service, Inc., 750 F. Supp. 2d 582 (MDNC 2010), is misplaced.  In Stroder the employer erroneously determined that the employee was not entitled to FMLA leave and thus dismissed her when she failed to be present for work.  In the present case Plaintiff was not dismissed for being absent.  He was dismissed for dishonesty.

follows:

> [T]he [employer] violated the Controlled Substance Examination Regulation by failing to utilize an approved laboratory to conduct plaintiff's drug testing. Such conduct may indeed subject an employer to liability under the civil penalty provisions of the Controlled Substance Examination Regulation. However, plaintiff in this case has failed to forecast any evidence that at the time of plaintiff's testing [the employer] knew, or even suspected, that Allied's laboratory … did not qualify as an approved laboratory[.] Plaintiff also has not forecast any evidence suggesting that his discharge was for an unlawful reason or for a purpose that contravenes public policy. In this case, [the employer's] allegedly unlawful conduct was the failure to comply with a regulatory statute governing employee drug-testing procedures. In contrast, [the employer's] *reason* for terminating plaintiff's employment was permissible. Under the doctrine of employment at will, an employer who may fire an employee for any reason or no reason at all may certainly terminate an employee for suspected drug use as part of an effort to maintain a drug-free workplace.

Garner, 350 N.C. at 572 (emphasis in original).

Garner stands for the rule of law that in "order to support a claim for wrongful discharge of an at-will employee, the termination itself must be motivated by an unlawful reason or purpose that is against public policy." Id. The issue in this case is not, as Hill argues, whether or not he actually appeared at the Buncombe County Courthouse on March 28, 2011 for jury duty. The issue is whether Hubbell, after conducting an investigation, concluded that Hill misrepresented his conduct and was dishonest with his employer. Hubbell could terminate Hill, an at-will employee, for any

reason or no reason as long as N.C. Gen. Stat. §9-32 was not violated. Thus, Hubbell certainly could terminate Hill for suspected falsification of his reasons for absence from work on March 28, 2011. The Plaintiff has failed to come forward with any evidence that Hubbell discharged him because he was summoned for jury duty. Summary judgment is therefore appropriate.

The Defendant also moved for summary judgment dismissing Hill's Wage and Hour Act claim for vacation pay. Hubbell submitted documentation showing that Hill had actually been overpaid for forty hours of unearned vacation at the time of his discharge. [Doc. 13-8]. In response to the Motion for Summary Judgment, Hill did not address this argument. Summary judgment is therefore appropriate for the Defendant as to this claim as well.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 12] is hereby **GRANTED** and this action is hereby **DISMISSED** with prejudice.

Judgment is entered simultaneously herewith.

Signed: April 18, 2013

Martin Reidinger
United States District Judge